## Illinois Central Railroad Company v. Robert H. Murphy.

1. NEGLIGENCE—*Speed of Trains in Incorporated Towns.*—It is negligence in a railroad company to run its trains into a station in an incorporated city at a speed in excess of that fixed by the ordinances of that city.

2. INSTRUCTIONS—*Rules of Railroad Companies.*—It is error for the court to leave it to a jury to say whether the rules of a railroad company are applicable to a certain train. The application of such rules is a matter of construction for the court.

**Memorandum.**—Action for injuries. Appeal from the Circuit Court of Champaign County; the Hon. FRANCIS M. WRIGHT. Judge, presiding. Heard in this court at the May term, 1893. Reversed and remanded. Opinion filed October 28, 1893.

The opinion states the case.

*Plaintiff's instruction assigned for error :*
The jury are instructed that you are to determine from all the facts and circumstances in evidence in this case, whether or not the special order given plaintiff by defendant, suspended, abrogated, or superseded the general rules of the company; but in no case would the rule requiring of the plaintiff the exercise of due care be suspended or abrogated.

WOLFE & STOKER, attorneys for appellant.

GERE & PHILBRICK, attorneys for appellee.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The plaintiff below recovered a judgment against the defendant below on account of injuries sustained by the plaintiff while engaged in the capacity of an engineer on defendant's road.

The plaintiff was pulling a special freight train, having a special time table, and ran into a construction train. Conceding that the men in charge of the construction train were not fellow-servants of the plaintiff, and that they were negligent in not having given more notice than was proved of their presence on the track, the vital question of fact was whether the plaintiff had exercised due care, and if not,

whether this contributed so materially to the result that it should bar a recovery.

The plaintiff's train was going north and the construction train was in a curve just north of the limits of Cobden station. The latter train was not visible, because of the curve, until just before the collision.

It appears that the plaintiff ran into the station at the rate of twenty-five miles per hour; that the rate fixed by the village ordinance was ten miles per hour, and that this rate of speed was so noted on the regular time card with which the plaintiff was familiar. It also appears that the plaintiff had been notified about thirty days before to look out for this construction train. At that time it was working about five miles north of Cobden. There was a general notice on the bulletin boards to look out for such trains. Clearly the plaintiff was at fault in running into the station at a speed in excess of that fixed by the ordinance. This was negligence of a very decided character, and it is difficult to see how it did not contribute materially to the result. As he neared the station some one attempted to signal him by holding up something in the hands, and a moment later waived a flag. The person doing this was probably connected with the construction train, though it is not very certain from the proof. At any rate the plaintiff was unable to stop after he got the signal. It was shown that the following rules were printed in the regular time table and were then in force:

"Rule 10. All trains when approaching stations, watering places or coaling places must do so with great care, expecting to find some train occupying the main track. Conductors of freight trains will be on top of cars and must see that their brakemen are in the proper place to immediately apply the brakes to slow or stop the train if necessary to do so. Also before commencing and while descending long grades. This rule is not intended to excuse employes from exhibiting the proper signals, as provided in rules 7, 9, 11 and 12, but as an extra precaution to prevent accident.

Rule 18. All extra and irregular trains running by tele-

graph orders must be run with great care. A long whistle for four (4) seconds must be sounded one-half mile from abrupt curves as a warning to trackmen."

There was a long descending grade extending a mile and a quarter south of the station, and when starting down this grade the plaintiff says he shut off steam, but did nothing else to reduce his speed, with the result that he ran into the station and through at the rate of twenty-five miles per hour. He whistled at the whistling post a quarter of a mile south of the station, but he did not give the signal required by rule 18 when approaching an abrupt curve. It is hardly doubtful that a compliance with these rules by the plaintiff would have averted the collision.

The court left it to the jury to say whether these rules were applicable to the plaintiff's train. This, we think, was error. It was a matter of construction for the court and the jury should have been instructed that the rules were applicable. I. C. R. R. Co. v. Neer, 31 App. 126. It is not desirable that employes of railroad companies should be encouraged in disregarding rules reasonable as these, and so necessary for the safety of the employes as well as of the property of the company. The safety of passengers is also involved in the enforcing of such regulations. Sound public policy requires a due observance of all those precautions, which experience has shown are indispensable in the operation of railroads, and we are not disposed to sanction laxity in this respect.

The judgment will be reversed and the cause remanded.